UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PAUL MOORE,

        Plaintiff,

-against-

**DEFENDANTS' STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

Civil Action No 9:19-cv-630 (TJM/TWD)

COUNTY OF ALBANY, SHERIFF CRAIG APPLE, and OFFICER CRAIG GIBBONS,

        Defendants.

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants County of Albany, Sheriff Craig Apple and Correction Officer Craig Gibbons (collectively "Defendants") by and through their attorneys, Eugenia K. Condon, Esq., Albany County, Michael L. Goldstein, *of counsel*, hereby submit the following Statement of Material Facts in support of their Motion for Summary Judgment. Citations are provided for each material fact where it can be found in the record on this motion and all exhibits referenced herein are attached to the Declaration of Michael Goldstein, Assistant County Attorney, dated July 23, 2021.

1

# STATEMENT OF MATERIAL FACTS

1. On May 11, 2018, Plaintiff, Paul Moore (hereinafter referred to as "Plaintiff"), was arrested for charges related to Criminal Possession of a Controlled Substance in the 4th Degree (Cocaine). (Exhibit A, p. 20, Lines 7-14; Exhibit L, at p. 2).[1]

2. Plaintiff subsequently pled guilty to Criminal Possession of a Controlled Substance in the 4th Degree (Cocaine) and received a sentence of ten (10) months in the Albany County Correctional Facility (hereinafter "ACCF"). (Exhibit A, p. 20, lines 15-19).

3. Plaintiff was actually incarcerated at the Albany County Correctional Facility (hereinafter referred to as "ACCF") from May 11, 2018 to January 8, 2019, or for approximately eight (8) months. (Exhibit A, p. 53, at lines 12-15).

4. On May 11, 2018, following his arrest by New York State Police, Plaintiff was remanded to ACCF and processed as a new inmate. (Exhibit A, p. 20, lines 7-9, lines 20-24).

5. Plaintiff concedes that during the initial intake process at ACCF he never made any employee aware the "previous issues" he allegedly had with Officer Craig Gibbons. (Exhibit B, p. 39, lines 1-12).[2]

---

[1] To the extent an exhibit has original pagination, all page citations refer to the document's original pagination. If an exhibit does not contain original pagination, then the page citation refers to the electronic pagination generated at the top of the electronic exhibit.

[2] Plaintiff alleges in his Complaint that he and Officer Gibbons had several altercations during previous incarcerations at ACCF between 2007 and 2012. (Dkt. No. 1, at ¶ 16). Defendants refer the Court to the factual allegations identified in Plaintiff's Complaint at ¶¶ 12-22 for a complete recitation of the "previous issues."

6. After the initial intake process, Plaintiff was subsequently assigned to a cell in Building A, West Housing Unit. (Exhibit L, p. 4).

7. On May 13, 2018, Officer Edward Douglas Hart was working the 3 p.m. to 11 p.m. shift. (Exhibit G, p. 15, lines 5-6).

8. On May 13, 2018, Lieutenant Shawn Scavo was working the 3 p.m. to 11 p.m. shift and was assigned to the dorm area. (Exhibit F, p. 10, lines 19-23, p. 11, lines 4-6).

9. On May 13, 2018, Officer Craig Gibbons was working the 3 p.m. to 11 p.m. shift and was assigned to the medical floor. (Exhibit D, p. 7, lines 2-11).

10. On May 13, 2018, Officer Ryan Lawson was working the 3 p.m. to 11 p.m. shift and was assigned to constant medical observation. (Exhibit E, p. 24, lines 15-20).

11. At approximately 6:43 p.m., the Plaintiff was called down to the medical unit for a sick call and entered Exam Room #1 to be examined by Nurse Dan Carson. (*See* Exhibit K, at p. 3; Exhibit F, p. 13, line 10).

12. Officer Craig Gibbons was sitting across the hallway from Exam Room #1, when Nurse Dan Carson called for his attention because while he was doing an exam of the Plaintiff, a balloon dropped on the floor during the exam. (Exhibit D, pp. 8-9).

13. Officer Craig Gibbons then immediately asked Plaintiff where the balloon was and Plaintiff stated that he dropped his walking pass on the floor. (Exhibit D, p. 9, lines 4-10).

14. Officer Craig Gibbons stated to Plaintiff that Nurse Carson knows the difference between a balloon and a walking pass and asked where the balloon was. (Exhibit D, p. 9, lines 11-15).

15. Plaintiff responded that he swallowed it. (Exhibit D, p. 9, line 17).

16. Once the Plaintiff indicated that he swallowed the balloon, Officer Craig Gibbons contacted his supervisor, Lieutenant Shawn Scavo, who responded to the medical unit and escorted the Plaintiff to the shower area along with Officer Edward Douglas Hart and Officer Ryan Lawson, to conduct a strip search of the Plaintiff. (Exhibit D, p. 10, lines 18-23, p. 11, lines 1-10; Exhibit M, at 18:45:01 – 18:45:37).[3]

17. Officer Craig Gibbons did not make any statements to the Plaintiff, Lieutenant Scavo, Officer Hart, or Officer Lawson prior to them leaving for the strip search. (Exhibit D, p. 11, lines 10-22).

18. Significantly, Officer Craig Gibbons remained at his assigned post while Lieutenant Shawn Scavo, Officer Edward Douglas Hart, and Officer Ryan Lawson escorted the Plaintiff to the shower area to conduct a strip search to look for suspected (and later confirmed) contraband. (Exhibit D, p. 11, lines 5-10).

19. Lieutenant Shawn Scavo made the determination to conduct the strip search in the shower area of the medical unit in order to afford the Plaintiff the most amount of privacy. (Exhibit F, p. 18, lines 3-9).

---

[3] A copy of the video relevant to this incident is included in an attached thumb drive for the Court's review, which may be viewed upon first opening the Ocularis Viewer application, and subsequently opening the video entitled, "02," which for the purposes of this motion is Exhibit "M" as the video is encrypted and cannot be modified without corruption of the file. The timing reference points included directly correspond to the timing of each video contained therein.

4

20. Officer Craig Gibbons could not see into the shower area from his assigned post. (Exhibit D, p. 12, lines 1-2).

21. Lieutenant Shawn Scavo ordered Officer Lawson to conduct the strip search of Plaintiff while Officer Hart and he observed in a supportive role. (Exhibit F, p. 18, lines 21-23, p. 19, lines 1-8).

22. Prior to the Plaintiff removing his pants and the balloon falling from his clothing, the Plaintiff was asked three (3) times to remove his pants, but failed to comply. (Exhibit B, p. 54, lines 6-12).

23. During the strip search, the Plaintiff began removing separate articles of clothing under the direction and commands of Officer Ryan Lawson, specifically his pants (or long johns), when a balloon fell out of his clothing and onto the floor. (Exhibit F, p. 21, lines 1-5).

24. The Plaintiff attempted to bend down and pick up the object, despite being directed by Officer Ryan Lawson to keep his hands on the wall. (Exhibit F, p. 21, lines 14-21; Exhibit E, p. 33, lines 4-21, p. 34, lines 1-4).

25. In order to prevent Plaintiff from gaining control of the contraband, Officer Ryan Lawson pushed Plaintiff up onto the shower wall, which was consistent with an appropriate level of force in order to motivate Plaintiff to cease his behavior. (Exhibit E, p. 34, lines 14-21).

26. Plaintiff continued to struggle with Officer Ryan Lawson and attempted to put the balloon inside of his mouth. (Exhibit E, p. 35, lines 18-23).

27. Lieutenant Scavo then applied a chemical agent to the Plaintiff's face in order to allow officers to gain control of Plaintiff's arms and place them behind his back into handcuffs. (Exhibit F, p. 24, lines 1-7).

28. During the struggle, the alarm sounded to call for assistance, and Officer Craig Gibbons responded from the medical unit to the shower area. (Exhibit D, p. 12, lines 3-21).

29. Upon arriving, Gibbons remained outside the shower area to observe the other officers while they proceeded to get the Plaintiff under control. (Exhibit D, p. 12, lines 3-21).

30. By the time Officer Craig Gibbons arrived at the shower area, Plaintiff was already cuffed and being decontaminated from the pepper spray. (Exhibit D, p. 12, lines 19-21).

31. Officer Craig Gibbons never entered in the shower room at any point in time. (Exhibit D, p. 13, lines 4-5).

32. Officer Gibbons did not assist with transporting inmate Moore from the shower area to any other location in the facility. (Exhibit D, p. 13, lines 6-9).

33. Upon leaving the shower area, Officer Craig Gibbons returned to his post and had no contact with Plaintiff at any point in time after the alleged incident in the shower area. (Exhibit D, p. 14, lines 2-16).

34. At some point in time after being handcuffed, Plaintiff began to spit at Officers Ryan Lawson and Edward Douglas Hart, at which time they applied a spit mask to the Plaintiff. (Exhibit E, p. 44, lines 5-12).

35. A spit mask was placed on the Plaintiff and he was brought to an examination room to be evaluated by a nurse and nursing staff. (Exhibit E, p. 46, lines 3-14).

36. The Plaintiff was treated by Nurse Dan Carson and then transported to Albany Memorial Hospital. (Exhibit E, p. 48, lines 1-4).

37. Following the incident, a search of the shower area yielded 2 small blue balloons, both of which contained marijuana. (Exhibit K, p. 2).

38. A thorough investigation was commenced following the incident on May 13, 2018, and incident reports and use of force reports were documented by staff. (Exhibit K).

39. Incident reports are internal reports that are generated as a matter of course when investigating an incident involving the use of force. (Exhibit K).

40. Incident report #18-096 was generated in connection to the use of force incident on May 13, 2018. (Exhibit K).

41. After supervisory review of the relevant documentation and video by Captain Wojcik, it was determined that the level of force used was necessary, and in compliance with departmental policy. (Exhibit K, at p. 21).

42. Plaintiff was subsequently issued a disciplinary ticket for his conduct, which included, among other things, charges for assaults on staff, fighting, refusing direct orders and possession of contraband. (Exhibit K, at p. 15; Exhibit N, at pp. 18-23).

43. Plaintiff testified at his § 50-h examination that he ultimately pled guilty to all charges following his disciplinary hearing in connection with the incident. (Exhibit A, p. 42, line 24, p. 43, line 1).

44. Plaintiff's Complaint and testimony sworn to under oath asserts that Officer Craig Gibbons went with him to the strip search area; participated in the strip search; was the initial aggressor in the use of force incident; and that he was actually hit in the face with a closed fist by Officer Craig Gibbons. (Dkt. No. 1, at ¶¶ 43-45; Exhibit B, p. 48, lines 4-8, p. 58, lines 7-20).

45. During part 1 of Plaintiff's examination before trial, Plaintiff testified that he was absolutely sure that Officer Craig Gibbons was present during the strip search, and without a doubt that it was Officer Craig Gibbons that hit him in the face with a closed fist. (Exhibit B, p. 60, lines 16-23).

46. When asked by counsel the following question at his examination before trial: "What if I told you that Craig Gibbons was never in the room during the strip-search, what would you say to that?" Plaintiff answered, "I would say pull the cameras." (Exhibit B, p. 60, lines 12-15).

47. At part 2 of Plaintiff's examination before trial, and upon reviewing the video evidence (attached as Exhibit M) in connection with the May 13, 2018 incident, Plaintiff readily identified Officer Gibbons, who can be seen running from the medical holding unit down the hallway to the strip search area. (Exhibit M, at 18:47:22 - 18:47:28).

48. This undisputed video evidence provides a direct conflict with Moore's prior § 50-h testimony, the allegations in his Complaint, and part 1 of his examination before trial testimony. (*Compare* Dkt. No. 1, at ¶¶ 43-45; *with* Exhibit C, p. 17, lines 18-24, p. 18, lines 1-17); Exhibit M, at 18:47:22 to 18:47:28).

49. After reviewing the irrefutable video evidence, Plaintiff recanted his previous sworn testimony and conceded that Officer Craig Gibbons was not the initial aggressor who punched him in the face. (Exhibit C, p. 17, lines 18-24, p. 18, lines 1-17, p. 19, lines 11-15).

50. Plaintiff further conceded that it is possible that he gave inaccurate testimony on two separate occasions prior to part 2 of his examination before trial. (Exhibit C, p. 18, lines 15-17).

51. Plaintiff testified at part 2 of his examination before trial that it did not appear that any officers were assaulting the Plaintiff in the hallway while the Plaintiff was being escorted from the shower area to the Medical Holding Unit, which is in further conflict with the allegations in his Complaint and Plaintiff's Bill of Particulars. (*Compare* Exhibit C, p. 21, lines 8-11 *with* p. 24, lines 10-16; Exhibit I, pp. 7-8, at ¶ 9; Exhibit M, at 18:50:37 to 18:51:33).

52. Plaintiff concedes that Officer Gibbons was not the alleged initial aggressor and it is undisputed that he was not present during the strip search area. (Exhibit C, p. 17, lines 18-24, p. 18, lines 1-17, p. 19, lines 11-15; Exhibit D, p. 11, lines 5-10; *see generally* Exhibit M).

53. On March 31, 2021, by Stipulation and Order of Discontinuance, the Defendant Officers John Doe 1 and John Doe 2 were terminated from the action with prejudice. (Dkt. No. 44).

54. It is undisputed that no other ACCF correction officers are named personally or under a pseudonym in Plaintiff Complaint's. (*See generally* Dkt. No. 1).

55. Plaintiff has never spoken to Sheriff Apple directly. (Exhibit A, p. 45, lines 13-14).

56. Plaintiff has never had any contact whatsoever with Sheriff Apple. (Exhibit A, p. 45, lines 18-20).

57. Plaintiff has no knowledge as to whether Sheriff Apple is aware of the May 13, 2018 incident, nor has he at any point in time complained to Sheriff Apple about the conduct of correction staff prior to the May 13, 2018 incident. (Exhibit A, p. 45, line 24, p. 46, lines 1-2).

DATED:   July 23, 2021
         Albany, New York

s/ *Michael L. Goldstein*
Michael L. Goldstein, Esq.
Assistant Albany County Attorney
*Attorney for Defendants*
Bar Roll No: 519722
112 State Street, 6th Floor
Albany, New York 12207
(T): (518)-447-7110
(F): (518)-447-5564