**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PAUL MOORE,**

                                    **Plaintiff,**

         **vs.**                                                **9:19-CV-630**
                                                                 **(TJM/TWD)**


**ALBANY COUNTY, CRAIG APPLE, Sheriff,**
**Albany County, CRAIG GIBBONS, Corrections**
**Officer, Albany County Correctional Facility,**

                                    **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

### DECISION & ORDER

         Before the Court are Defendants' motion for summary judgment, dkt. # 49, and

Plaintiff's motion for leave to amend his complaint, dkt. # 64.  The parties briefed the

issues.  The Plaintiff filed a brief while represented by counsel.  After he dismissed his

counsel, Plaintiff filed received permission to supplement his brief *pro se*, and included an

additional motion for leave to reopen discovery.  See dkt. # 74.  The Court will decide the

motions without oral argument.

## I.      BACKGROUND

         This case arises out of Plaintiff Paul Moore's incarceration at the Albany County

Correctional Facility.  Plaintiff alleges that Craig Gibbons, a corrections officer at the

facility, Craig Apple, the Albany County Sheriff, and Albany County violated his

constitutional rights.  Plaintiff contends that officers at the Correctional Facility used excessive force and injured him while conducting a strip search of his person.

Plaintiff Paul Moore was arrested on charges related to a controlled substance violation on May 11, 2018.  Defendants' Statement of Material Facts in Support of Summary Judgement ("Defendants' Statement"),  Dkt. # 49-16, at ¶ 1.[1]  Plaintiff later pled guilty and received a ten-month sentence, to be served in the Albany County Correctional Facility ("ACCF").  Id. at ¶ 2.  Plaintiff's term at the ACCF lasted from May 11, 2018 until January 8, 2019.  Id. at ¶ 3.

After his arrest and remand to the ACCF on May 11, 2018, Plaintiff was processed as a "new inmate."  Id. at ¶ 4.  Plaintiff had issues at the ACCF with Defendant Officer Craig Gibbons during previous incarcerations, but he never made any ACCF employee aware of these issues during the period in question.  Id. at ¶ 5.  Plaintiff was assigned to a cell in Building A, West Housing Unit after his initial intake.  Id. at ¶ 6.

Officer Edward Douglas Hart, Lieutenant Shawn Scavo, Officer Ryan Lawson, and Defendant Gibbons were all working the 3 p.m. to 11 p.m. shift at the ACCF on May 13, 2018.  Id. at ¶¶ 7-10.  At around 6:43 p.m. on that day, Plaintiff was called to the medical unit for a sick call.  Id. at ¶ 11.  He entered Exam Room #1 for an examination by Nurse Dan Carson.  Id. Defendant Gibbons sat in a chair across the hallway from Exam Room #1 while Carson conducted the examination.  Id. at ¶ 12.  Carson called Gibbons' attention to what Defendants claim was a balloon that dropped to the floor during the exam.  Id.

---

[1]Defendants filed the statement of material facts with citations to the record as required by the Local Rules.  Plaintiff responded.  The Court will cite to the Defendants' statement for matters which are uncontested and note where the parties disagree.

Plaintiff contends that no balloon fell to the floor; he contends that he dropped his "hall pass." Plaintiff's Response to Defendants' Statement of Material Facts ("Plaintiff's Response"), dkt. # 64-7, at ¶ 12.

Defendants claim that Gibbons asked Plaintiff where the balloon was. Defendants' Statement at ¶ 13. Plaintiff contends that he told Gibbons that he had dropped his pass. Plaintiff's Response at ¶ 13. Defendants claim that Gibbons then stated to Plaintiff Nurse Carson knew the difference between a balloon and pass, and again asked where the balloon was. Defendants' Statement at ¶ 14. Without citing to any part of the record, Plaintiff "disagrees" with this statement. Plaintiff's Response at ¶ 14. Defendants claim that Plaintiff admitted that he had swallowed the balloon. Defendants' Statement at ¶ 15. Plaintiff denies that he swallowed anything. Plaintiffs' Response at ¶ 15. Gibbons called his supervisor, Lieutenant Shawn Scavo, to inform him that Plaintiff has swallowed a balloon. Defendants' Statement at ¶ 16.

Lieutenant Scavo responded with a medical unit. Id. Scavo escorted Plaintiff to a shower unit with Officer Edward Douglas Hart and Officer Ryan Lawson. Id. Their purpose was to conduct a strip search of the Plaintiff. Id. Gibbons said nothing to Scavo, Hart, and Lawson before they left to conduct the search. Id. at ¶ 17. Gibbons remained at his assigned post while the other three officers escorted for the search. Id. at ¶ 18.[2] Scavo testified that he made the decision to conduct the strip search in the shower area of the medical unit. Id. at ¶ 19. Doing so in the shower unit, he asserted, would protect

[2]Plaintiff denies this statement, but only to claim that he "knows there were three (3) officers but did not testify as to who escorted him." Plaintiff's Response at ¶ 18. This statement does not address whether Gibbons accompanied him.

Plaintiff's privacy.  Id.

Gibbons testified that he could not see into the shower unit from where he was seated.  Id. at ¶ 20.  Without citing to any record evidence, Plaintiff claims that he disagrees with this statement because he "does not know what Officer Gibbons can see from where."  Plaintiffs' Response at ¶ 20.

Scavo testified that he ordered Lawson to conduct the strip search while Scavo and Hart "observed in a supportive role."  Defendants' Statement at ¶ 21.  Plaintiff claims he cannot recall which officer performed which role, and does not recall hearing any orders from Scavo.  Plaintiff's Response at ¶ 21.

The strip search began with Plaintiff removing articles of clothing at Officer's Lawson's direction and command.  Defendants' Statement at ¶ 23.  During this process, Defendants claim, a balloon fell on the floor.  Id.  Plaintiff denies that anything fell out of his clothing.  Plaintiff's Response at ¶ 23.  Defendants assert that Plaintiff three times failed to comply with an order that he remove his pants.  Defendants' Statement at ¶ 22.  Defendants further contend that Plaintiff tried to bend down and pick the object up from the floor, even though Lawson told him to keep his hands on the wall.  Id. at ¶ 24.  Plaintiff denies that he made any effort to do so.  Plaintiff's Response at ¶ 24.

Defendants claim that Lawson pushed Plaintiff onto the shower wall in an effort to prevent him from picking the object up.  Defendants' Statement at ¶ 25.  They further allege that Plaintiff struggled with Ryan and attempted to put the object into his mouth.  Id. at ¶ 26.  Plaintiff denies he tried to swallow anything.  Plaintiff's Response at ¶ 26.  Scavo then applied a chemical agent in Plaintiff's face.  Defendant's Statement at ¶ 27.

While this struggle occurred, an alarm sounded and Defendant Gibbons responded

from the medical unit to the shower area.  Id. at ¶ 28.  Defendants contend that Gibbons stayed "outside the shower area to observe the other officers while they proceeded to get the Plaintiff under control."  Id. at ¶ 29.  Defendants further allege that Gibbons did not arrive at the shower area until after Plaintiff had been cuffed and decontaminated from the chemical agent.  Id. at ¶ 30.  Plaintiff "disagrees" but offers no evidence about when Gibbons arrived.  Plaintiff's Response at ¶ 30.  He agrees, however, that "Gibbons never entered in the shower room at any point in time."  Id. at 31.  Gibbons did not assist with transporting Plaintiff from the shower area to any other location in the facility.  Defendants' Statement at ¶ 32.  Plaintiff "believes there was an additional attack that was not captured by the video shown to him," though he offers no view on whether Gibbons assisted with transporting him anywhere.  Plaintiff's Response at ¶ 32.  Plaintiff responds in the same way to Defendants' statement that Gibbons "returned to his post and had no contact with Plaintiff at any point in time after the alleged incident in the shower area."  Plaintiff's Response at ¶ 33; Defendant's Statement at ¶ 33.

Defendants allege that, after the struggle in the shower, Plaintiff "had blood running into his mouth and was attempting to spit blood."  Defendant's Statement at ¶ 34.  They further allege that Plaintiff spit blood at Dawson and Hart, and that "they applied a spit mask" to Plaintiff.  Id.  Plaintiff denies that he spit at the officers.  Plaintiff's Response at ¶ 34.  He does not deny that officers put a spit mask on him and "brought [him] to an examination room to be evaluated by a nurse and nursing staff."  Defendants' Statement at ¶ 35.  Nurse Dan Carson transported Plaintiff to Albany Memorial Hospital.  Id. at ¶ 36.

Defendants point to evidence that indicates that an investigation revealed two small blue balloons that contained marijuana in the shower area.  Id. at ¶ 37.  Plaintiff contends

5

that he was not made aware of the results of an investigation. Plaintiff's Response at ¶ 37. Defendants produced incident reports and use-of-force reports after the May 13, 2018 incident. Defendants' Statement at ¶ 38. Defendants produce such reports "as a matter of course" after incidents where officers use force. Id. at ¶ 39. After a review, an ACCF Captain concluded that the force used was necessary and complied with departmental policy. Id. at ¶ 41. Plaintiff received a disciplinary ticket for his conduct that charged him with assaults on staff, fighting, refusing direct orders, and possession of contraband. Id. at ¶ 42. Plaintiff ultimately pled guilty to the charges at a hearing. Id. at ¶ 43.

Plaintiff's Complaint and sworn testimony alleges that Defendant Gibbons went with him to the strip search area. Id. at ¶ 44. He further alleged that Gibbons participated in the strip search, was the first officer to use force against him, and hit him in the face with a closed fist. Id. Plaintiff's initial deposition[3] testimony repeated these claims. Id. at ¶ 45. When defense counsel asserted that Gibbons had not been present, Plaintiff suggested that Defendants "pull the cameras" of the incident. Id. at ¶ 46. At Plaintiffs next deposition, Plaintiff had reviewed tapes of the incident and identified Gibbons, who could "be seen running from the medical holding unit down the hallway to the strip search area." Id. at ¶ 47. While Plaintiff still claims that Gibbons was involved in the incident, he now admits that "Gibbons was not the initial aggressor who punched him in the face." Plaintiff's Response at ¶ 48; Defendants' Statement at ¶ 49. Plaintiff testified that he was "pretty sure" that he gave inaccurate testimony about Gibbons' involvement. Plaintiff's Response at ¶ 50; Defendants' Statement at ¶ 50. Plaintiff admitted that he did not see

---

[3]Defendants here use the state-court term "examination before trial." The Court prefers the federal term, "deposition."

any additional attack on video in the hallway while officers escorted him away from the shower area, but contends that other video evidence existed "that was not displayed that would support his claim of an attack during the hallway walk."  Plaintiff's Response at ¶ 51. He admits, however, that Defendant Gibbons "was not the alleged initial aggressor and it is undisputed that the he was not present during the strip search area" incident. Defendants' Statement at ¶ 52.

The initial Complaint had John Doe 1 and John Doe 2 Defendants.  Id. at ¶ 53.  On March 31, 2021, the parties stipulated to an order of discontinuance for those John Doe parties with prejudice.  Id. at ¶ 53.  Plaintiff admits that he has never spoken to Defendant Sheriff Apple directly, had had no contact with him, that he has no knowledge that Apple was aware of the incident, and that he never complained to Apple about the conduct of any corrections staff before May 13, 2018.  Id. at ¶¶ 55-57.

Plaintiff, represented by counsel, filed a Complaint in this matter on May 10, 2019. See dkt. #1.  The Complaint describes the alleged attack in the shower area at the ACCF and raises four causes of action.  Count One, raised pursuant to 42 U.S.C. § 1983, alleges a violation of Plaintiff's constitutional rights when officers used excessive force against him during the strip search.  County Two raises Monell liability claims against the County of Albany.  County Three alleges a state-law negligence claim.  Count Four raises an assault and battery claim.

At the close of discovery, Defendants raised their instant motion.  Plaintiff responded, and also filed a motion for leave to amend the complaint and name as Defendants Officers Hart and Lawson.  Defendants oppose that motion.  After the parties briefed the summary judgment motion, Plaintiff's attorney filed a motion to withdraw as

7

counsel.  See dkt. # 71.  Judge Dancks granted that motion after Plaintiff wrote to inform the Court that he did not oppose the withdrawl.  See dkt. # 73.  Judge Dancks also granted Plaintiff's request to supplement his briefing on the motion for summary judgment and his motion to amend.  Id.  Plaintiff filed his brief.  See dkt. # 74.

## II.    LEGAL STANDARD

Defendants seek summary judgment.  Plaintiff seeks leave to amend the Complaint.

### A.    Summary Judgment

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

> ### B.    Leave to Amend

Plaintiff seeks leave to file an amended complaint that names the officers who the evidence indicates injured him.  The Federal Rules of Civil Procedure provide that "leave to amend the pleadings should be 'freely give[n] . . . when justice so requires.'" AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010)). Generally, courts in this Circuit have permitted "'a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" Id. (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d. Cir. 1993)).  Still, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)).  "In gauging prejudice, [courts] consider, among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) (quoting Block, 988 F.2d at 350).  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'" State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d

9

843, 856 (2d Cir. 1981)).  Prejudicial delay can occur when "the amendment [comes] on the eve of trial and would result in new problems of proof" such as a need for "a great deal of additional discovery."  Id.

## III.   ANALYSIS

The Court will first address the Defendants' motion and then the Plaintiff's request for leave to amend, applying the standards stated above.

### A.   Summary Judgment

Defendants seek summary judgment on all of Plaintiff's claims, or in the alternative to have the Court dismiss Plaintiff's federal claims and then decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

The Court will address each of Defendants' arguments in turn, noting whether Plaintiff actually offers any opposition.

#### i.   Federal Claims

Plaintiff directs his Section excessive force claim against all three of the named Defendants and a Section 1983 municipal liability claim against the County of Albany. Each Defendant seeks judgment on those claims.

##### a.   Gibbons

Defendant Gibbons argues that he cannot be liable for excessive force because the evidence in this case, including video evidence from the ACCF demonstrates that he had no personal involvement in the incident.  He points out as well that Plaintiff admitted in his deposition and in his response to Defendants' statement of material facts that he did not have evidence of Gibbons' involvement.

Plaintiff responds to Defendants' arguments with a motion for leave to amend which discusses the evidence of record in that context. He does not address the arguments that Defendants make regarding summary judgment, but instead uses the record evidence to argue that questions of fact exist as to whether Hart and Lawson used excessive force. In essence, Plaintiff opposes summary judgment in favor of parties not named in the Complaint and does not offer any argument against the summary judgment motion the parties named in the Complaint actually brought.

The Court will therefore treat the actual summary judgment motion as one where the Plaintiff offers no opposition. In the summary judgment context, "the failure to respond to the motion does not alone discharge the burdens imposed on a moving party." Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 246 (2d Cir. 2004). The moving party must show both "the absence of a genuine issue of material fact" and "'that he is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). The Court accepts properly supported material facts as true but "the moving party must still establish that the undisputed facts entitle him to 'a judgment as a matter of law[.]" Id. Thus a court "considering a motion for summary judgment must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" Id. (quoting Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)).

Excessive force claims brought pursuant to the Fourth Amendment "'are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'" Shamir v. City of New York, 804 F.3d 553, 556 (2d Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). Using "excessive force renders a seizure of the person unreasonable

and for that reason violates the Fourth Amendment." Id.  To decide whether the force was reasonable, a court should pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Soares v. Connecticut, 8 F.3d 917, 921 (2d Cir. 1993) (quoting Graham, 490 U.S. at 396).  This standard focuses on "'a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015) (quoting Graham, 490 U.S. at 397).  "A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." Id. at 103.

No evidence here indicates that Gibbons used any force, much less excessive force.  The Court has reviewed the videotape in question, which shows Gibbons observing Plaintiff during the Nurse's examination, and watching him as he is led by other officers to the site of the strip search.  The video later shows Gibbons running down the hallway to that site.  Plaintiff agrees that he did not participate in any of the events that occurred in that place.  While Plaintiff contends that he was attacked at another location, he offers no evidence that Gibbons participated in that alleged attack.  No evidence exists to demonstrate that Gibbons used excessive force, and the Court will grant the motion with respect to Gibbons.

### b.    Apple

Defendant Apple is the Sheriff of Albany County and the supervisor of the ACCF. He cannot be liable simply by virtue of his position.  Under Section 1983, "liability for supervisory government officials cannot be premised on a theory of *respondeat superior*

because § 1983 requires individual, personalized liability on the part of each government defendant." Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014). A plaintiff must introduce "[e]vidence of a supervisory official's 'personal involvement' in the challenged conduct." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001)). Personal involvement can include "direct participation by the supervisor in the challenged conduct." Id. Personal involvement by a supervisor can "also be established by evidence of an official's (1) failure to take correct action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Id.

Plaintiff has offered no evidence of any involvement of Defendant Apple in the incident that injured him. As such, the Court will grant the motion with respect to Sheriff Apple as well.

### c. County of Albany

Plaintiff's Complaint names the County of Albany in his excessive force claim (raised against "all defendants") and in a separate count based on municipal liability. In essence, those are the same claims. While Section 1983 liability can only exist against a municipality under special circumstances, such liability can only exist when an underlying constitutional violation occurs.

As such, the relevant standard relates to municipal liability for the County of Albany. Municipal liability is limited under Section 1983 by Monell v. Dep't of Soc. Servs., 436 U.S.

13

658 (1978).  In that case, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).  To prevail, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of County Commr's v. Brown, 520 U.S. 397, 403 (1997).  "A government's official policy may be 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir. 1999) (quoting Monell, 436 U.S. at 694).

Plaintiff has pointed to no evidence that such a policy or custom led to his injury. Thus, even if Plaintiff had pointed to proof that one of the Defendants here violated his constitutional rights, he has not produced any evidence that his injuries were the result of a municipal policy and/or custom.  The Court will grant the county's motion for summary judgment on the federal claims as well.

## ii.  State Law Claims

Plaintiff has also raised state law claims for negligence and assault and battery against all of the named Defendants.  The Court has already explained that no evidence indicates that Gibbons was involved in the incident in question.  Plaintiff has not pointed to any evidence of negligence or assault and battery against Gibbons, and the motion will be granted in that respect.

As for Sheriff Apple, the Court has explained that no evidence indicates any intentional conduct by him and no direct involvement in the events that led to Plaintiff's injuries.  Since assault and battery is an intentional tort, his lack of involvement in the events means he cannot be liable for such claims.  Mazzaferro v. Albany Motel

14

Enterprises, Inc., 127 A.D.2d 374, 376 (3d Dept. 1987). As for a negligence claim, "it is . . . well established that 'a Sheriff cannot be held personally liable for the acts or omissions of his deputies while performing criminal justice functions, and that . . . principle precludes vicarious liability for the torts of a deputy.'" Trisvan v. Coutny of Monroe, 26 A.D.3d 875, 876 (Feb. 3, 2006) (quoting Barr v. County of Albany, 50 N.Y.2d 247, 257 (NY 1980)). Here, the acts that injured the Plaintiff occurred while deputies performed their duties at the ACCF–strip searching and maintaining safety at the jail. As such Sheriff Apple cannot be liable for any negligence that occurred. The Court will grant the motion in this respect as well.

As for liability of the County, courts in New York are clear that "[a] county may not be held responsible for the negligent acts of the Sheriff and his deputies on the theory of respondeat superior liability." Marashian v. City of Utica, 626 N.Y.S.2d 646, 647 (4th Dept. 1995). Even if the County could have such liability, no evidence indicates that a named defendant committed such unlawful acts, and liability would not apply under these circumstances. The Court will grant the motion in this respect.[4]

### iii.    Conclusion as to Summary Judgment

For those reasons, the Court will grant the Defendants' motion for summary judgment and dismiss the case against them.

### B.    Motion for Leave to Amend

In many ways, rather than answering the motion for summary judgment, the Plaintiff instead argued that evidence existed by which a reasonable juror could find the deputies

_____

[4]The County also cannot be liable for an intentional tort, like assault and battery.

15

who actually conducted the strip search could be liable for violating Plaintiff's rights.  He

moves for leave to amend the Complaint to include these Defendants.  Defendants argue

in part that the motion should not be allowed because the statute of limitations has run

and amendment would be futile.

Plaintiff brings his federal claims under 42 U.S.C. § 1983.  That statute "does not

provide a statute of limitations."  Hogan v. Fisher, 728 F.3d 509, 517 (2d Cir. 2013).  A

court is to "apply the statute of limitations for personal injury under state law."  Id.  In New

York, a three-year statute of limitations applies.  Id.  Claims in New York against

municipalities and their employees must be filed within one year and ninety days of the

event giving rise to the litigation.  N.Y. Gen. Mun. L. ¶ 50-i(1).  The incident in question

here occurred on May 18, 2018.  Plaintiff filed his motion to amend on November 22,

2021, more than three years past the date of his injury, meaning that he failed to satisfy

either statute of limitations.  See dkt. # 64.  An amendment to name new defendants

would not be timely barring some exception to the general rule under state or federal law,

then.

Plaintiff did not respond to the Defendants' argument here.  The Court notes that

the original pleadings named "John Doe" defendants.  See dkt. # 1.  The Plaintiff alleged

that "John Doe 1-2 are employed as corrections officers with Albany County."  Id. at ¶ 10.

The Complaint describes Plaintiff's initial examination by a nurse, the alleged discovery of

contraband, and the arrival of "approximately three other corrections officers . . . in the

examination room" who "escorted Mr. Moore to the shower area of the medical unit."  Id. at

¶ 32.  Unnamed officers conducted the strip search.  Id. at ¶ 32-41.  Plaintiff alleges that

the "attack" he suffered occurred after he resisted demands from officers that he found

16

unreasonable.  Id. at ¶ 42.  Gibbons, Plaintiff's Complaint alleges, initiated the attack.  Id. at ¶ 43.  "Once Defendant Gibbons punched" Plaintiff, however, "other correction officers who were present began attacking Mr. Moore."  Id. at ¶ 45.  These attacks by unnamed officers continued until officers brought Plaintiff back to a booking area and took him to the hospital.  Id. at ¶¶ 46-56.  The evidence related above makes clear that the parties Plaintiff seeks to add as Defendants, Douglas Hart and Ryan Lawson, participated in the alleged use of excessive force against the Plaintiff.  The question here is whether some exception permits the Court to find that the statute of limitations has not run with respect to these Plaintiffs, who have not previously been sued.

Plaintiff named John Doe parties, but "[g]enerally, 'John doe pleadings cannot be used to circumvent statutes of limitations because replacing a John Doe with a named party in effect constitutes a change in the party sued.'" Hogan, 738 F.3d at 517 (quoting Aslandidis v. U.S. Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993)).  A party may substitute for a John Doe plaintiff only "'when all of the specifications of Fed.R.Civ.P. 15(c) are met.'"  Id. (quoting Aslanidis, 7 F.3d at 1075).  Meeting those requirements means that the amendment "relates back" to the original pleading and the amendment is timely if the original pleading was.  Id.

In analyzing a similar issue in Hogan, the Court of Appeals considered whether untimely claims raised against named parties by a prisoner proceeding *pro se* could relate back to claims made against John Does in the original complaint.  The Court pointed towards two provisions of Rule 15(c) that might have aided the plaintiff.  The Court first considered Rule 15(c)(1)(C).  That section permits "an amended complaint adding a new party to relate back under Rule 15(c)(1)(c) under certain conditions:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, *but for mistake of identity*, the original action would have been brought against it; and . . . (4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitation period.

Id. (quoting Barrow v. Weathersfield Police Dept., 66 F.3d 466, 468-69 (2d Cir. 1995) (emphasis in original)).  Plaintiff could not use this provision in Hogan, however, because Circuit law made clear that "the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" Id. (quoting Barrow, 66 F.3d at 470).  The same situation applies here.  Plaintiff cannot use Rule 15(c)(1)(C) to bring his proposed Amended Complaint within the statute of limitations.

The Court in Hogan also pointed to Rule 15(c)(1)(A) as a possible source of relation back.  That provision permits relation back when "'the law that provides the applicable statute of limitations allows relation back.'" Id. at 518 (quoting FED R. CIV. P. 15(c)(1)(A)).  Because Section 1983 "derives its statute limitations from state law," the court looked to the law of the forum state, New York, to determine whether an amendment to name John Doe defendants could relate back to the original filing.  Id.  The court found that Section 1024 of the New York Civil Procedure Laws and Rules permits substitutions of John Doe parties "nunc pro tunc," that is, to relate back to the original filing.  Id. at 518-519.  A party seeking to relate back to the original filing "must meet two requirements."  Id. at 519.  "First, the party must 'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name.'" Id. (quoting Bumpus v. N.Y.C. Transit Auth., 66 A.D 3d 26, 883 N.Y.S.2d 99, 104 (2d Dept. 2009)).  "Second, the party must describe the John Doe party 'in such form as will fairly apprise the party that [he] is the

intended defendant.'" Id.

Plaintiff's effort to add the John Doe defendants fails on the first part of this test. Plaintiff deposed Ryan Lawson on March 15, 2021.  See Exh. E to Defendants' Motion, dkt. # 49-6.  He deposed Douglas Hart on March 29, 2021.  See Exh. G to Defendants' Motion, dkt. # 49-8.  At Lawson's deposition, Plaintiff's counsel cross-examined him with a Use of Force Report regarding the incident in question.  Exh. E to Defendants' Motion at 23.  Both Officer Lawson and Officer Hart provided narratives and signed the report in their names.  The report also contains their printed names and ID numbers.  See dkt. # 49-12.  Moreover, Plaintiff recieved copies of the incident reports in October, 2020, when Defendants provided them as part of their discovery responses.  See Dkt. # 49-12.

Plaintiff therefore clearly had information that indicated that Hart and Lawson were the officers involved in the excessive force incident about which he complains by March 2021 at the latest, and perhaps earlier after the parties exchanged discovery.  Rather than taking prompt action to amend his complaint and name the parties actually involved in the incident about which he complains, Plaintiff waited at least six months, and only sought to amend the pleadings after discovery closed and after Defendants filed their motion for summary judgment.  Plaintiff also voluntarily dismissed the Doe defendants with prejudice after the depositions occurred, but made no effort to name other defendants.  Under the circumstances, Plaintiff did not exercise due diligence to identify these defendants and make them part of the lawsuit.  Instead, Plaintiff seeks to amend the complaint now, when a motion for summary judgment apparently makes clear that he has named parties who cannot be liable.  Plaintiff is represented by an attorney, and the Court must find a lack of diligence under these circumstances.  The Court therefore finds that an amended

19

complaint that names Dawson and Hart would not relate back to the date Plaintiff filed his original Complaint and will deny the motion to amend as futile.

### C.    Plaintiff's Supplemental Briefing and Motion for Leave to Reopen

On February 24, 2022, Magistrate Judge Thérèsè Wiley Dancks held a telephone conference with the counsel and the Plaintiff.  See Docket Entry for February 24, 2022. Judge Dancks called the conference because she had received letters from the Plaintiff regarding his counsel.  See dkt. #s 68, 70.  Plaintiff's first letter complained that his attorney had acted without his consent or knowledge in the litigation, including stipulating to the dismissal of certain parties.  See dkt. # 68.  Plaintiff's second letter confirmed that he wished to terminate his counsel's representation.  See dkt. # 70.  On February 24, 2022, Judge Dancks held a telephone conference and discussed the problems of representation with Plaintiff and his counsel.  See docket entry for 2/24/22.  Judge Dancks explained to Plaintiff that if he dismissed his counsel he would either have to retain new counsel or proceed pro se.  Id.  Judge Dancks then directed Plaintiff's counsel to file a motion to withdraw.  Id.  Counsel did so.  See dkt. # 71.  Plaintiff responded to his attorney's motion by contending that his attorney failed to respond to his requests to obtain evidence and took actions without consulting him.  See dkt. # 72.  He particularly complained about video recordings of the incident in question that he contended the Defendants had not provided and requested that the Defendants provide video from the hallway outside the medical unit during his transport to the booking areas.  Id.  He contended that his relationship with his attorney was "irretrievably broken."  Id.  He also requested that the Court reopen discovery to obtain the video in question.

20

On April 30, 2022, Judge Dancks issued a text order.  See dkt. # 73.  That text order granted the motion to withdraw filed by Plaintiff's counsel.  Judge Dancks also denied Plaintiff's motion to reopen discovery.  Id.  The order permitted Plaintiff to file a supplemental motion in opposition to the motion for summary judgment and in support of the cross-motion to amend.  Id.  Plaintiff filed that motion, which the Court will address here.  See dkt. # 74.

### i.     Motion for Summary Judgement

As in his counseled brief, Plaintiff's brief in opposition to the summary judgment motion does not address any substantive issues raised in the Defendants' motion.  For the reasons stated above, the Court finds that summary judgment is appropriate for the moving Defendants.  No evidence supports any claim that any of the moving individual Defendants were involved in the use of excessive force, and nothing supports any claim against the municipal Defendants.  Plaintiff offers no arguments in his *pro se* brief to undermine the Court's conclusions in this respect.  Instead, he admits that he lacks evidence to resist the summary judgment motion without more discovery.  The Court will discuss that issue below.

### ii.     Motion to Amend

Plaintiff argues that he should be granted leave to amend the Complaint to include Corrections Officer Lawson and Corrections Officer Hart, officers he contends used excessive force against him.  Plaintiff largely repeats the arguments in his counseled brief. He recognizes that Federal Rule of Civil Procedure 15(c)(1)(A) provides the best basis for permitting him to amend the Complaint.  He cites to Hogan, 738 F.3d 509, to argue that

21

Rule 15(c)(1)(A) permits him to amend the Complaint and replace the John Doe

Defendants with the officers he claims used excessive force against him and avoid the bar

of the relevant statute of limitations.

Plaintiff contends that he used due diligence to identify the John Doe Defendants

named in his Complaint, and that the discovery process revealed that those Defendants

were Lawson and Hart.  He complains his prior counsel stipulated the dismissal of the

John Doe Defendants without replacing them with named Defendants.   He contends that

he would not have stipulated to such dismissal without substitution, and that Counsel did

not inform him of the stipulation until too late.  He argues that:

> Would a reasonable person believe that a person would pursue a claim against
> individuals just to dismiss the claim with prejudice when they received everything
> they ultimately needed to amend the claim and/or complaint?  The imminent
> question is why would they dismiss?  And dismiss with Prejudice?  Furthermore, the
> prior representation of the Plaintiff made the stipulation to dismiss John Doe 1 and
> 2 without the Plaintiff knowing or consenting.  In a circumstance such as that an
> evidentiary hearing must take place to resolve the factual dispute . . . Plaintiff has
> raised that issue (see Dkt. No. 53); although subsequently [previous counsel]
> immediately made contact with the Plaintiff and promised to 'make it right'
> prompting the Plaintiff to move forward with [previous counsel] still as
> representation; Plaintiff addressed the court in an attempt to make the court aware
> that it still was a relevant issue see Dkt. No. 61; and ultimately Plaintiff continued to
> raise the issue that Plaintiff did not consent or have any knowledge that his
> representation would stipulate the dismissal of John Doe 1 and 2.

Dkt. # 74, at 22.

On August 12, 2021, Plaintiff wrote the Court to request that his attorney be

removed from the case and that the Court stay proceedings "until the confusion within this

matter is cleared up."  See dkt. # 53.  In support of his request, Plaintiff wrote that his

counsel:

> never at any time except Thursday August 5th, 2021 informed me that he stipulated
> to dismiss John Does 1 and 2 f[rom] this civil matter.  I was informed by him by him

giving me a 5 inch stack of papers that the defendants' attorney has submitted with a motion for summary judgment.  After taking this stack of material back to my cell and inspecting the contents I discovered the one (1) piece of paper [that] outlines the stipulation agreement.  I was never informed of this, nor did I ever consent to this before it took place.  In fact, it appears that the same day the stipulation agreement took place the defendant's Attorney stated during the deposition that there was more video of the incident.  The question is why haven't they turn[ed] it over?  Morever why hasn't my legal representation demanded this in discovery and sought out [an] order for the courts if this demand wasn't honored.

Id.

The Court notes here that it recognizes the problem with his attorney's performance in this matter: by dismissing the Doe Defendants and not replacing them with Lawson and Hart, counsel undermined Plaintiff's ability to proceed to trial on his excessive force claim. The Court reads Plaintiff's *pro se* pleading to argue that he should be excused of any delay in failing to substitute Lawson and Hart because his attorney did not keep him apprised of discovery and did not inform him of the names of the officers who allegedly beat him.  In other words, Plaintiff contends that he should not be held responsible for his attorneys dilatory actions in failing to substitute parties.  "It is true that courts are generally reluctant to recognize attorney error as a basis for relief from an order or judgment. Gomez v. City of New York, 805 F.3d 419, 423 (2d Cir. 2015).  Courts hold this position because they operate in a "'system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'"  Id. at 424 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 634 (1962)).

This "rule deeming a party bound by the acts of his or her attorney is not absolute." Id.  Courts have provided relief from judgments in cases of "an attorney's disappearance or mental illness where the party 'tried diligently to contact his or her attorney."  Id. (quoting Vindigni v. Meyer, 441 F.2d 376, 377 (2d Cir. 1971)).  In those types of cases,

23

courts "have remanded for evidentiary hearing on the allegations raised in the motions for relief and the parties' diligence in prosecuting their cases." Id.  In addition, "unlike many other acts an attorney undertakes on a client's behalf, the decision to settle or otherwise dismiss claims 'rests with the client' and is 'not automatically bestowe[ed] . . . on retained counsel.'" Id. (quoting Pereira v. Sonia Holdings, Ltd. (In re Artha Mgmt.), 91 F.3d 326, 329 (2d Cir. 1996)).

In Gomez, the Court of Appeals found that the district court erred by failing to hold an evidentiary hearing when the plaintiff disputed that he had acceded to his counsel's dismissing of his claims. Id.  The Court noted that "[w]ithin days" of the parties' stipulating dismissing the matter, the plaintiff "filed a pro se motion for relief from the stipulation and a detailed letter setting forth his assertion that [the attorney] lacked the authority to dismiss his claims." Id.  Noting that "the presumption that an attorney of record has authority to settle a case is rebuttable," the Court concluded that "the district court should not have denied [plaintiff's] motion without holding an evidentiary hearing to address [counsel's] authority to dismiss Gomez's claims." Id.

Here, Plaintiff complains that he was not informed of the stipulation his attorney signed dismissing John Does 1 and 2. See dkt. # 41.  Plaintiff's counsel and Defendants' counsel signed that stipulation on March 26, 2021. Id.  The parties agreed to discontinue the action "as to Defendant Officers Jon Doe (1-2), in their individual and official capacities, in its entirety, including any and all cross-claims, appeals, and/or future lawsuits (whether state of [sic] federal) arising from the same facts or circumstances, by and between the parties, with prejudice, and on the merits, without costs to any party as against any other." Id.

Plaintiff's attorney did not stipulate to the dismissal of Plaintiff's claims for excessive force, but instead agreed that there was no need to continue to name John Doe Defendants in the case.  As explained above, in doing so and failing to name the officers actually alleged to have used excessive force, Plaintiff's counsel allowed the statute of limitations to run against those Defendants.  Dismissing the Doe Defendants in itself did not prevent Plaintiff from obtaining a recovery–he could not recover against "Doe" defendants in any case.  Plaintiff needed to replace the Doe Defendants with Lawson and and Hart when he discovered their names.  While Plaintiff's letter to the Court complained about dismissal of the claims against the John Doe Defendants, Plaintiff's August 2021 letter, which came nearly five months after the stipulation, did not ask the Court to name either of the Defendants who Plaintiff now suggests should be named.  The letter came after Defendants filed a motion for summary judgment that argued that no one named in the Complaint was involved in any use of force, and while Plaintiff was still represented by counsel.  As explained above, Plaintiff's counsel sought leave of court to amend the complaint to include the officers.   While the Court understands that Plaintiff may wish now to replace the Doe Defendants with Lawson and Hart, Plaintiff would run into the same problems concerning the ability to amend that his counseled brief did: discovery produced the officers' names in October 2020, and he did nothing to substitute them for the Doe Defendants until after the Defendants filed a motion for summary judgment.  The result would be the same if Plaintiff had clearly requested an amendment in his August 2021 letter.  Plaintiff cannot use the fact that he now proceeds *pro se* to convince the Court to ignore his failure to act diligently during the years that this suit has been pending.  The Court will deny the motion in this respect as well.

25

### iii.    Leave to Reopen

Plaintiff next seeks leave to reopen the case to obtain limited discovery.  He

contends that the Court should reopen discovery and order the Defendants to produce

video footage showing his transport from the Medical Unit in the ACCF to booking in the

ACCF.  He contends that he experienced an additional assault during that transport, that

the video recordings would demonstrate this, and that Defendants should have produced

the material in discovery.  Plaintiff also contends that the evidence would support his

claims of supervisory liability, since they would show that supervisory officials were

deliberately indifferent to a beating he received.  His retained attorney, he claims, also

should have demanded production of the video recordings.  See dkt. # 72.  Judge Dancks

denied this request on March 30, 2022.  See dkt. # 74.

The Court will consider the Plaintiff's request to reopen discovery as an appeal of a

non-dispositive order from a Magistrate Judge.   A district court judge reviewing a

magistrate judge's non-dispositive pretrial order may not modify or set aside any part of

that order unless it is clearly erroneous or contrary to law.  Labarge v. Chase Manhattan

Bank, N.A., 1997 U.S. Dist. LEXIS 13803, 1997 WL 5853122, at *1 (N.D.N.Y. Sept. 3,

1997) (citing 28 U.S.C. § 636(b)(1)); FED. R. CIV. P. 72(a); Mathias v. Jacobs, 167

F.Supp.2d 606, 621-23 (S.D.N.Y. 2001); Dubnoff v. Goldstein, 385 F.2d 717, 721 (2d Cir.

1967) (court's decision "not to disqualify himself is ordinarily reviewable only upon appeal

from a final decision on the cause in which the application . . . was filed.").  Findings are

clearly erroneous when the reviewing court is firmly convinced the lower court decided an

issue in error.  Lanzo v. City of New York, 1999 U.S. Dist. LEXIS 16569, 1999 WL

1007346, *2-3 (E.D.N.Y. Sept. 21, 1999).  This standard imposes a heavy burden on the

objecting party, and only permits reversal where the district court determines the

magistrate judge "abused his broad discretion over resolution of discovery matters."

Labarge, 1997 U.S. Dist. LEXIS 13803, 1997 WL 583122 at *1.

As a general matter, "'[t]he decision whether to reopen discovery is within a district

court's discretion.'" Moore v. Peters, No. 13cv6271, 2022 U.S. Dist. LEXIS 102265, at *23,

341 F.R.D. 463, __ F.Supp.3d ____, 2022 WL 2062550 (W.D.N.Y. June 6, 2022) (quoting

Moroughan v. County of Suffolk, 320 F.Supp.3d 511, 515 (E.D.N.Y. 2018)).  Courts look to

the existence of "'good cause.'" Id. (quoting Bakalar v. Vavra, 851 F.Supp.2d 489, 493

(S.D.N.Y. 2011)).  Courts often apply a six-factor test in making this determination:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that discovery will lead to relevant evidence.

Id. (quoting Moroughan, 320 F.Supp.3d at 515).  The burden for demonstrating the need

to reopen discovery lies with the moving party.

The Court cannot find any error in Judge Dancks' decision not to permit additional

discovery.  The Court reaches the same conclusion upon evaluating the Plaintiff's motion

*de novo*.  Here, discovery had been closed for months, and Plaintiff was not diligent in

seeking material which he claimed was available.  While he contends that he and his

attorney sought the material repeatedly, nothing in the record indicates that Plaintiff sought

the aid of the Court to obtain the material in question until after discovery had closed and

the parties briefed the summary judgment issues.  Moreover, as to the remaining

defendants, the Court finds that the evidence that Plaintiff seeks–even assuming it

exists–would not support a claim of municipal liability or individual liability.  Plaintiff does

not allege that any of the named defendants engaged in the alleged use of excessive

force against him or were present when the alleged excessive force occurred, and the

Court is not convinced that video evidence of the events in question that Plaintiff claims

exists would establish some sort of supervisory liability.  At this point in the litigation,

reopening discovery in an effort to find video recordings to produce evidence against

parties not present during the alleged beatings would only extend the litigation

unnecessarily.

Plaintiff attempts to excuse his failure to obtain discovery during the relevant period

by pointing to the alleged failings by his retained attorney.  Plaintiff alleges that his

attorney was aware of the need to request such discovery, and that his attorney did not

act.  Plaintiff contends that, now that he is representing himself, the Court should reopen

discovery to permit him to request the allegedly missing materials.  "Even if a client [has] a

disagreement with her attorney on a matter such as the conduct of discovery, 'all litigants

are bound by the concessions of freely retained counsel.'" Jackson v. Fed. Express, 766

F.3d 189, 198 (2d Cir. 2015) (quoting Bergersonv. N.Y. State Office of Mental Health, 652

F.3d 277, 289 (2d Cir. 2011) (internal quotation omitted)).  As in Jackson, the Plaintiff and

his attorney had ample time to attempt to obtain the video recordings in discovery, if

recordings in addition to those reviewed by the Court in deciding these motions existed.

As in Jackson, in this case, "[t]he scheduled time for discovery was over, and a fully

briefed motion for summary judgment was pending when the request to reopen was

made."  Id. at 199.  Plaintiff never filed a motion during the pendency of discovery to

produce these recordings, but only argues that they are necessary to his case after

discovery has closed.

The Court will therefore deny the motion in this respect.

## IV.     CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, dkt. #

49, is hereby **GRANTED**.  Plaintiff's motion for leave to amend, dkt. # 64, is hereby

**DENIED**.  The Plaintiff's supplemental motion to amend, which the Court construes to also

contain an appeal of Judge Dancks' decision to deny Plaintiff's request to reopen

discovery, dkt. # 74, is hereby **DENIED.**  The Clerk of Court is directed to **CLOSE** the

case.

**IT IS SO ORDERED.**

Thomas J. McAvoy
Senior, U.S. District Judge

**Dated:** September 12, 2022